## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

JAN KING and
KIMBERLY MAYNARD,

                Plaintiffs,

v.                                         CIVIL ACTION NO.  3:23-0129
                                         (consolidated with 3:23-0130)

PHYLLIS SMITH, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Pending is Defendants Cabell County Commission, Phyllis Smith, Scott Caserta, and Samantha McCollins's Motion to Dismiss. ECF No. 9. For the reasons that follow, the Defendants' Motion is **GRANTED.**

### BACKGROUND[1]

After receiving the results of the 2020 Census, Defendant Cabell County Commission "began the process of re-aligning the Magisterial Districts, Precincts, and Polling Places in Cabell County." Compl. ¶ 12, ECF No 1-1. Presumably concerned or interested about how realignment may affect the upcoming election, Plaintiffs submitted FOIA requests for documents pertaining to the redistricting. While Plaintiffs were permitted to see some of the requested documents on January 11, 2022, they were not "ready" on January 27, 2022. *See id.* ¶¶ 14–19.

---

[1] Plaintiffs' Complaint is not an example of clarity. At times, it is written from the first-person perspective of Plaintiff Maynard, at other times, it is written as a third-person narrative. The Court has done its best to decipher and summarize the facts in this section.

On January 29, 2022, Plaintiffs and three other unnamed individuals met at the Cabell County Voter's Registration Office to submit Certificates of Announcement for the 2022 election. *Id.* at ¶ 20. Defendant Samantha McCollins was the only employee on duty at the time the Plaintiffs arrived. *Id.*

Plaintiffs each submitted to Certificates of Announcement, one for the Republican Executive Committee and the other for "Cabell County Commission District 1." *Id.* at ¶ 21.

Plaintiffs aver that they had their Certificates of Announcement "mostly completed" but had not filled out lines "3, 6(a) and 6(b)" because "Plaintiff Kim Maynard was unsure what information should be entered on these lines – since redistricting was not complete and none of the five us were able to obtain a copy of the 'new' Magisterial map." *Id.* at ¶ 22.

Notably, Plaintiffs' Complaint does not state what information lines "3, 6(a) and 6(b)" sought. However, Defendants attached a copy of the Certificate of Announcement to their Motion. *See* King Certificate of Announcement, ECF No. 9-1; Maynard Certificate of Announcement, ECF No. 9-2.[2] Lines 3, 6(a), and 6(b) ask the candidates to list their "District/Division," "Magisterial District (County Commission and Board of Education Candidates)," and "Magisterial or Executive Committee District (County Executive Committee Candidates)."

Defendant McCollins told Plaintiffs that redistricting was not yet complete and that they should "go by" what the West Virginia Secretary of State's information stated. *Id.* at ¶ 23. Defendant McCollins asked Plaintiffs for their addresses and "went to her computer to look up

---

[2] The Court finds these documents are properly considered on the Defendants' Motion to Dismiss, as they are integral to the Complaint and their authenticity has not been challenged. *See Blankenship v. Manchin*, 471 F.3d 523, 526 n.1 (4th Cir. 2006) (noting that the Court may consider authentic documents that are integral to and relied upon by the complaint, even if they were not attached to the complaint by the plaintiff).

[their] district information." *Id.* at ¶ 24. Thereafter, she instructed Plaintiffs what district to put on

their Certificates. *Id.*[3] Plaintiffs then completed their registration by taking the completed forms to

the Clerk's office and paying the requested fees. *Id.* at ¶ 27.

That evening, Plaintiff Maynard checked the to see if the West Virginia Secretary of State

website had been updated to list that day's candidacy filings. *Id.* at ¶ 28. While both Plaintiffs were

listed as candidates for the County Republican Executive Committee, "neither Plaintiff was on the

list as a candidate for County Commission." *Id.*

Within days, Plaintiffs received letters from attorney Ancil Ramey on behalf of Defendant

Phyllis Smith. *Id.* at ¶ 29. Mr. Ramey's letters "directed each Plaintiff to file a new Certificate of

Announcement with Magisterial District 1 on or before February 4, 2022." *Id.* And, on February

3, 2022, "Plaintiffs returned to [the] Voter's Registration Office to submit a corrected Certificate

of Announcement as instructed in Ancil Ramey's letter." *Id.* at ¶ 30.

At the Office, Plaintiffs were greeted by Defendant McCollins. *Id.* at ¶ 31. Plaintiff King

informed her Plaintiffs were there to submit a "corrected Certificate of Announcement." *Id.*

However, instead of providing Plaintiffs with their original forms, Defendant Collins provided

Plaintiffs with blank Certificates of Announcement to fill out. *Id.*

"Because of the lack of maps as aforesaid and based upon [their] previous experience at

the time of filing," Plaintiff Maynard asked Defendant McCollins which Magisterial District she

was to write on the form. *Id.* at ¶ 32. Defendant McCollins stated she did not know. *Id.*

---

[3] The Complaint alleges Plaintiff Maynard was instructed to put Magisterial District 3 as her district. Compl. ¶ 26. It does not allege what district Plaintiff King was instructed to put, but the form provided the Defendants indicates that she ultimately wrote she was a resident of Magisterial District 2. *See* ECF No. 9-1, at 2.

Plaintiffs filled out their corrected Certificates of Announcement using the "Voter's Information" on the West Virginia Secretary of State's website. *Id.* at ¶¶ 33–34. They then notarized each other forms and handed them to Defendant McCollins for stamping, filing, and copying. *Id.* at ¶ 34.

The next day, on February 4, 2022, Plaintiff Maynard received an email from Mr. Ramey containing the following attachments:

1) a letter addressed to Secretary of State Mac Warner dated February 4, 2022,
2) the letter Mr. Ramey sent to Plaintiff Maynard date January 31, 2022,
3) a stamped copy of the Certificate of Announcement Plaintiff Maynard submitted on January 29, 2022,
4) a stamped copy of the Certificate of Announcement Plaintiff Maynard submitted on February 3, 2022, and
5) a blank Certificate of Announcement with an instruction sheet for completion.

*Id.* at ¶ 35.

The Complaint states,

[i]n Mr. Ramey's email[4] to Mac Warner, he states he is attaching information regarding a fraudulent Certificate of Candidacy filed with his client Cabell County Clerk Phyllis Smith. He (Mr. Ramey) will advise him (Mac Warner) if Plaintiff Kim Maynard withdraws her candidacy by the deadline of 2-15-2022. Otherwise, it is his understanding the West Virginia Secretary of State office will process [Plaintiff Maynard's] Certificate of Announcement and Mr. Ramey will refer this matter to the Cabell County Prosecuting Attorney.

*Id.* at ¶ 36. Mr. Ramey's email also stated the Clerk's Office could not reject Plaintiff's Certificate of Announcement, even though the address she listed as her residence "is outside Magisterial District 1." *Id.* at ¶ 37.

---

[4] It is unclear whether Mr. Warner was cc'd on the email that Plaintiff Maynard received or if Plaintiff is describing the contents of the letter addressed to Mr. Warner that was attached to the email Plaintiff Maynard received.

Mr. Ramey's email claimed that Plaintiff Maynard submitted her Certificate of Announcement fraudulently under oath and improperly notarized Plaintiff King's "fraudulent" Certificate. Accordingly, Mr. Ramey requested that Plaintiff Maynard's Notary Public be investigated by the supervisory authority of notaries public. *Id.* at ¶ 38.

Mr. Ramey's correspondence was also received by Donald "Deak" Kersey, an employee of the West Virginia Secretary of State's Office. *Id.* at ¶ 39. Mr. Kersey responded to the email on February 8, 2022, thanking Mr. Ramey for the information. *Id.* "Mr. Kersey further stated if this matter does not resolve itself, and Mr. Ramey feels further investigation is warranted, to let him know." *Id.*

On or about February 8, 2022, Plaintiffs names were added to the Secretary of State's list of candidates for Cabell County Commission. *Id.* at ¶ 41.

Plaintiffs declined the opportunity to withdraw their candidacies by Mr. Ancil's February 15, 2022 deadline. Instead, "Plaintiffs believed then and now that they have followed the letter of the law and have relied upon the information given to them by the Defendants either in person or from their publicly available resources." *Id.* at ¶ 44.

On March 3, 2022, Plaintiffs received an email from a reporter from the Herald Dispatch who was writing an article on the Plaintiffs and the "emergency ballot commissioners meeting" scheduled for that afternoon. *Id.* at ¶ 50. Plaintiffs were not given notice of this meeting. *Id.*

Later, Plaintiffs received an email forwarded by Mr. Ramey informing them that they would not appear on the May ballot for Cabell County Commission and attached a "resolution" from the Ballot Commission. *Id.* at ¶ 51.

On or about April 8, 2022, Plaintiffs received a letter from Kim Mason, Director of Investigation at the West Virginia Secretary of State Office. *Id.* at ¶ 52. The letter informed

Plaintiffs that an "Election Law Complaint" had been filed with her office, making allegations against Plaintiffs for providing false information on a Certificate of Announcement, in violation of W. Va. Code § 3-5-7(f), and making a false statement or misrepresentation on a Certificate of Announcement, in violation of W. Va. Code § 3-3-9(b). *Id.*

Plaintiffs aver that as of April 29, 2022, the redistricting of Cabell County was not yet complete, and that under the 2012 map "which was on file with the West Virginia Secretary of State office and contained five magisterial districts each of the Plaintiffs were eligible regardless." *Id.* at ¶ 54.

Moreover, Plaintiffs submit that "Defendant[] Cabell County Commission in a last minute action sought to redraw the magisterial districts and reduce the number from five to three so as to specifically eliminate certain candidates." *Id.* at ¶ 55.

Plaintiffs were never refunded their filing fees for the 2022 election. *Id.* at ¶ 56.

On January 30, 2023, Plaintiffs filed this civil action in the Circuit Court of Cabell County, West Virginia. The case was removed to this Court on the basis of federal question jurisdiction. *Notice of Removal*, ECF No. 1. Defendants now move to dismiss the Complaint.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim,

the Court must accept all factual allegations in the complaint as true. *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## ANALYSIS

### A.  Judicial Notice & the 2022 Cabell County Commission Election

"[A] court make properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015). Moreover, "courts are permitted to consider facts and documents subject to judicial notice without converting [a] motion to dismiss into one for summary judgment." *Zak v. Chelsea Therapeutics Intern., Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015).

In addition, pursuant to Federal Rule of Evidence 201, courts may "judicially notice a fact that is not subject to reasonable dispute," so long as that fact is "generally known within the court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

The Court takes judicial notice of the fact that at the time the Plaintiffs filed their Certificates of Announcement,[5] only one vacancy for the May 2022 election existed: a seat in Magisterial District No. 1. This fact is generally known within this judicial district and is not subject to reasonable dispute. *See, e.g.*, West Virginia Sec'y of State, *Elections*, https://apps.sos.wv.gov/elections/candidate-search/ (showing that during the 2022 Cabell County

---

[5] As noted in the Complaint, in February 2022, Commissioner Nancy Cartmill passed away, creating an additional unexpired term vacancy on the Cabell County Commission. Nowhere in the Complaint does either Plaintiff aver that they sought to run for this unexpired term.

election, there was one (1) regular term commission seat) (last visited Nov. 21, 2023). Plaintiffs do not appear dispute this fact in their responsive memorandum. See Pls.' Opp. Brief to Defs.' Motion to Dismiss at 4, ECF No. 15.

While the Plaintiffs' Complaint suggests Plaintiffs may have been confused about the magisterial districts, how they were drawn, and even what magisterial district they lived in, they do not, anywhere in their Complaint, submit that they lived in Magisterial District 1.

As discussed in the following sections, the absence of that allegation is of vital significance to Plaintiffs' claims.

**B. Plaintiffs' Complaint**

Plaintiffs' Complaint asserts six causes of action. Each is discussed to the extent it is challenged in the Defendants' motion.

1. First Amendment (Count III)

Count III of Plaintiffs Complaint alleges, under 42 U.S.C. § 1983, that the Defendants violated Plaintiffs' First, Fourth, and Fourteenth Amendment rights. Compl. ¶¶ 63–65.

This Court has acknowledged that a political candidate has a First Amendment right to participate in the electoral process. *See Barr v. Ireland*, 575 F. Supp. 2d 747, 755 (S.D.W. Va. 2008) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 787–88 (1983)). In this instance, however, the Court is satisfied that Plaintiffs have not sufficiently alleged that their removal from the ballot violated their First Amendment rights.

It has long been established that "[t]he power of the legislature to regulate the nomination and election of candidates for public office and to prescribe essential qualifications to be possessed by the candidates in order to be eligible to be nominated or elected is plenary within constitutional

limits." Syl. Pt. 2. *Adkins v. Smith*, 408 S.E.2d 60, 61 (W. Va. 1991) (quoting Syl. Pt. 2, *State ex rel. Brewer v. Wilson*, 150 S.E.2d 592 (W. Va. 1966)).

The constitutional provisions related to county commissions in West Virginia are found within Article IX of the West Virginia Constitution. Section 10 of that Article provides, in pertinent part, that no two "commissioners shall be elected from the same magisterial district." *See also* W. Va. Code § 3–5–4 ("Candidates for the office of commissioner of the county commission shall be nominated and elected in accordance with the provisions of section ten, article nine of the Constitution of the State of West Virginia and the requirements of Section one-b, article one, chapter seven of this code."). Accordingly, to be qualified for a seat on a county commission, there must either a vacancy or a seat up for reelection in the magisterial district for which the candidate seeks election.

West Virginia law further dictates "[t]he language of the pertinent statute or constitutional provision relating to essential qualifications of candidates for a public office must be regarded by a court as controlling in determining at what time an essential qualification must exist." Syl. Pt. 3, *Adkins*, 408 S.E.2d at 61. Pertinent statutory language provides as follows:

> A candidate for the office of county commissioner shall be a resident from the magisterial district for which he or she is seeking election:
>
> (1) By the last day to file a certificate of announcement pursuant to section seven, article five, chapter three of this code; or
> (2) At the time of his or her appointment by the county executive committee or the chairperson of the county executive committee.

W. Va. Code § 7-1-1b(b).

Inasmuch as Plaintiffs here were not appointed to a commission seat, they must have been a "resident from the magisterial district for which [they were] seeking election" "[b]y the last day to file a certificate of announcement[.]" W. Va. Code § 7-1-1b(b)(1).[6]

Yet, as noted above, Plaintiffs plead no facts that suggest they were residents of Magisterial District No. 1. In fact, Plaintiffs concede they were "ruled ineligible to appear on the ballot for the Office of the Cabell County Commission from Magisterial District No.1." Opp. Brief to Defs.' Motion to Dismiss at 5.

Plaintiffs attempt to save their First Amendment claim by arguing that the magisterial districts were redrawn at the last minute as "a subterfuge for eliminating the Plaintiffs from the ballot." *Id.* Specifically, Plaintiffs argue the "actions of the Cabell County Commission and their agents were designed to specifically make the Plaintiffs ineligible, and thus, a violation of their Constitutional rights." *Id.* Yet, the Plaintiffs' Complaint does not contain *any* facts to support an allegation that Magisterial District No. 1 was drawn specifically to exclude the Plaintiffs. Indeed, the only fact in the Complaint relating to the Commission's reason for redrawing the districts was related to the outcome of the 2020 Census. *See* Compl. ¶ 12.

As such, Plaintiffs fail to plausibly allege a First Amendment claim and Count III must be **DISMISSED**.

---

[6] Indeed, to hold otherwise would "permit a candidate to file, run for office, and become elected from a particular magisterial district and subsequently attempt to cure any residency problem he may encounter by changing the district of his residency." *Adkins*, 408 S.E.2d at 65. Such "thinly veiled attempts to subvert the obvious intent of the restrictions on members from the same magisterial district" cannot be condoned. *Id.*

2.  Due Process (Count IV)

Count IV of Plaintiffs' Complaint alleges Defendants violated Plaintiffs' "constitutional rights guaranteed under the Fourth and Fourteenth Amendments to the Constitution of the United States by depriving them of their property without due process of law." Compl. ¶ 67.

Yet Plaintiffs do not have a property or liberty interest in any political or elected office. *See Snowden v. Hughes*, 321 U.S. 1, 7 (1944) ("More than forty years ago this Court determined that an unlawful denial by state action of a right to state political office is not a denial of a right of property or of liberty secured by the due process clause.").

In their opposition brief, Plaintiffs allege, for the first time, the Defendants deprived Plaintiffs of their "uncontested and indisputable property rights when they were charged fees to be placed on ballots and not refunded said fees when the Board of Ballot Commissioners failed to list the Plaintiffs as candidates." Opp. Br. to Defs.' Motion to Dismiss at 11–12.

However, Plaintiffs did not plead a Fifth Amendment claim in their Complaint. Moreover, even if they had, Plaintiffs fail to plead facts that allow the Court to conclude they were entitled to a return of their filing fees. Defendants correctly note that "[t]he Takings Clause was not meant to protect property owners in their voluntary dealings with the government." *Student "B" v. Howard Cnty. Cmty. Coll.*, 512 F. Supp. 3d 610, 619 (D. Md. 2021).

The allegations in Plaintiffs' Complaint are not sufficient to support a due process claim under 42 U.S.C. § 1983. Count IV is **DISMISSED**.

3.  Outrageous/Intentional Infliction of Emotional Distress (Count II)

Count II of Plaintiffs' Complaint alleges the Individual Defendants are liable for intentional infliction of emotional distress. *See* Compl. ¶¶ 60–62. Defendants' Motion to Dismiss argues for

-11-

dismissal only on behalf of Defendants Phyllis Smith and Scott Caserta.[7] Defs.' Mem. of Law at 17–19, ECF No. 10. Specifically, Defendants Smith and Caserta argue Plaintiffs failed to allege specific factual content to support the state law claims against them. The Court agrees.

To state a claim for the tort of intentional infliction of emotional distress or "outrage," a plaintiff must plausibly allege:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

Plaintiffs' Complaint is devoid of any factual allegations that support a claim of intentional infliction of emotional distress. The Complaint lacks allegations that either Caserta or Smith took any actions against the Plaintiffs, let alone that their actions were atrocious, intolerable, extreme, and outrageous.

Notably, Plaintiffs did not respond to Defendant Caserta and Smith's motion to dismiss Count II. *See generally* Opp. Brief to Defs.' Motion to Dismiss. Accordingly, Plaintiffs' claims for intentional infliction of emotional distress as to Defendants Caserta and Smith are **DISMISSED.**

---

[7] Defendants' motion to dismiss does not seek to dismiss Counts II or V of the Complaint as they are asserted against Defendant Samantha McCollins. While the Court is puzzled by this strategic choice, the Court will not, *sua sponte,* consider the propriety of the claims against her.

4.  Civil Conspiracy (Count V)

Count V of Plaintiffs' Complaint alleges that the Defendants conspired "to allow Defendant[s] Phyllis Smith and County Commission of Cabell County, West Virginia, to thwart the normal election process in Cabell County, West Virginia," and in doing so "violated the Plaintiff[s'] clearly established constitutional rights all in violation of the First, Fourth, and Fourteenth Amendments[.]" Compl. ¶¶ 70–71 (emphasis omitted).

Defendants' Motion to Dismiss argues for dismissal of Count V only on behalf of Individual Defendants Phyllis Smith and Scott Caserta and the Commission. *See* Defs.' Mem. of Law at 17–19. Given that the Plaintiffs have failed to identify any facts to support a claim for conspiracy against Defendant Scott and Defendant Caserta, and because Court has already found that Plaintiffs have failed to plead any violation of their First, Fourth, and Fourteenth Amendment rights, *see supra* § C.1–2, their Civil Conspiracy claims against Defendant Smith, Defendant Caserta, and Defendant Cabell County Commission must be, and therefore are, **DISMISSED**.

5.  Vicarious Liability (Count I)

Defendant Cabell County Commission may not be held vicariously liable for the intentional acts of its employees. *See Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533 (W. Va. 1996) ("In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of [its employee].").

Despite Plaintiffs' half-hearted attempt to argue the Commission may be held vicariously liable for negligence, *see* Opp. Brief to Defs.' Motion to Dismiss at 7, they have not asserted any *claims* that sound in negligence.

Moreover, because the Court has already determined that Plaintiffs' have failed to sufficiently allege any constitutional violations, Plaintiffs' argument that the Commission may be

held liable because the intentional acts violated Plaintiffs' clearly established constitutional rights similarly fails.

Accordingly, Plaintiffs' claim in Count I, seeking to hold the Cabell County Commission vicariously liable for the acts of its employees, is **DISMISSED**.

      6.   Declaratory Judgment (Count VI)

Finally, Count VI of Plaintiffs' Complaint is titled a "Petition for Declaratory Relief." In support of this claim, Plaintiffs' Complaint states:

> 73. The actions of the Defendants were unconstitutional and illegal
> 74. The Ballot Commissioners appointed by the Cabell County Commission exceeded their authority under statutory and common law of the State of West Virginia
> 75. Mandamus is the agreed-upon procedural mechanism for resolving questions of a candidate's eligibility. State ex rel. Carenbauer v. Hechler, 208 W. Va. 584, 542 S.E.2d 405 (W. Va. 2000).

Compl. ¶¶ 73–75.

Plaintiffs have failed to rebut the arguments set forth in the Defendants' motion to dismiss that the Board of Ballot Commissioners is a separate entity from the Cabell County Commission that is not a party to this civil action.[8] *See* Defs.' Mem. of Law at 19–20; Defs.' Reply to Pls.' Opp. Br. at 1 n.1., ECF No. 18; W. Va. Code § 3–1–19(a).

The federal law governing declaratory judgment provides that the Court may declare the rights and other legal relations of an interested party "[i]n a case of actual controversy within its

---

[8] The Defendants also argue that the Court does not have jurisdiction to compel a state officer or state agency to perform a duty. While this is a true statement of the law, *see Dement v. West Virginia*, No. 2:20-cv-00388, 2020 WL 5502305 (S.D.W. Va. Sept. 11, 2020), the Court does not read Paragraph 75 of the Complaint as a request for a writ of mandamus, but rather as a request that the Court find, as a matter of law, that the Board of Ballot Commissions should have used state mandamus action to resolve the candidacy instead of issuing resolutions to remove the Plaintiffs from the ballot.

jurisdiction." 28 U.S. Code § 2201(a). Inasmuch as the Board of Ballot Commissioners are not a party to this action, and therefore is not in actual controversy with Plaintiffs, the Court lacks the authority to issue the declaratory judgment the Plaintiffs seek. Consequently, Count VI of Plaintiffs' Complaint is **DISMISSED.**

### CONCLUSION

In light of the foregoing, the Court **ORDERS** as follows:

1) Defendants' Motion is **GRANTED**;

2) All counts pending against Defendants Phyllis Smith, Scott Caserta, and the County Commission of Cabell County, West Virginia are **DISMISSED;** and

3) As to Defendant Samantha McCollins, Counts III and IV are **DISMISSED**. Plaintiffs' claims in Counts II and V of the Complaint remain pending against Defendant McCollins.[9]

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        November 29, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[9] *See supra* note 7.

-15-